[Cite as *State v. Robinson*, 2011-Ohio-5802.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | JUDGES:<br>Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee, | Hon. John W. Wise, J.<br>Hon. Patricia A. Delaney, J. |
| v. | |
| | Case No. 2011CA00061 |
| ANDREW D. ROBINSON, | |
| Defendant-Appellant. | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2010CR1749A


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      November 7, 2011


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant


JOHN D. FERRERO                       ANTHONY K. KAPLANIS
PROSECUTING ATTORNEY,                 701 Courtyard Center
STARK COUNTY, OHIO                    116 Cleveland Ave. NW
                                      Canton, Ohio 44702


By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South, - Suite 510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

{¶ 1} Defendant-appellant Andrew D. Robinson appeals his conviction entered by the Stark County Court of Common Pleas. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶ 2} On November 14, 2010, Appellant accompanied his friend, Cornell Wallace, to the M&K Market in Massillon, Ohio. Wallace lured Maroune Sassi, an employee of the store, outside to arrange a purchase of cigarettes. Appellant then approached Maroune from behind, hitting him in the head with a gun, and then pointing the gun at him.

{¶ 3} Ron Gilbert, a store employee who had arrived early for work and was waiting in his vehicle for his shift to begin, observed the altercation. Gilbert, a former Marine who had previously served three tours of duty, pulled his gun inside his vehicle, then shot Appellant in the groin from the window.

{¶ 4} Appellant immediately fled the scene, leaving a trail of blood behind him. The police were able to follow the blood trail to a nearby apartment, where Appellant was then apprehended and arrested.

{¶ 5} Following a jury trial, Appellant was found guilty of felonious assault, with an accompanying firearm specification. The trial court sentenced Appellant to eleven years in prison.

{¶ 6} Appellant now appeals, assigning as error:

{¶ 7} "I. THE TRIAL COURT'S FINDING OF GUILTY OF FELONIOUS ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

**{¶ 8}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown* (2010), —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard). See, *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720 at ¶ 68.

**{¶ 9}** Jackson thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See *Id.* at 318–319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* —— U.S. ——, 130 S.Ct. at 673–674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

**{¶ 10}** Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "any rational trier of fact [to find] the essential elements of the crime

beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. See, *State v. Clay,* supra at ¶ 70.

**{¶ 11}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. *Id.* at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " *Id.* at 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether " *any* " rational trier of fact could have made that finding, *Id.* at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560.

**{¶ 12}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St.3d 387, 678 N.E.2d 541, 1997–Ohio–52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997–Ohio–355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its

way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins,* supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

{¶ 13} In *Thompkins,* the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." *Id.* at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Id.* at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002–Ohio–4931 at ¶ 38, 775 N.E.2d 498.

{¶ 14} Appellant argues his conviction for felonious assault with a firearm specification, in violation of R.C. 2903.11(A)(2), is against the manifest weight and sufficiency of the evidence, we disagree.  The statute reads:

{¶ 15} "(A) No person shall knowingly do either of the following:

{¶ 16} "***

{¶ 17} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordinance."

{¶ 18} Mr. Gilbert testified at trial:

{¶ 19} "Q. Okay.  So Maroune and this gentleman are directly to your right?

{¶ 20} "A. To my right.

{¶ 21} "Q. And where was the Cougar at?

{¶ 22} "A. The Cougar was parked diagonally from me.

{¶ 23} "* * *

{¶ 24} "A. He notices me, saw me sitting in the truck and walked over to me.

{¶ 25} "Q. Okay.

{¶ 26} "A. He asks for a light for his Black & Mild.

{¶ 27} "Q. Does he come to which side of your truck?

{¶ 28} "A. He comes to the driver window.

{¶ 29} "Q. Okay.  So immediately to your left?

{¶ 30} "A. Yes, immediate left.

{¶ 31} "Q. Okay.  Asks you - -

{¶ 32} "A. Started talking to me about what I was doing there, why I was posted outside the store.  Asks me where he could score some weed at, and my answers were, you know, I am just waiting for work to start and I stopped that a while ago.

{¶ 33} "Q. Okay.  Did you give him a light?

{¶ 34} "A. Yes, I did give him a light.

{¶ 35} "Q. Okay.  At the time that you were observing all of this and even at the time that he was talking to you, did you still think that something was unusual?

{¶ 36} "A. It was a little fishy.

{¶ 37} "* * *

**{¶ 38}** "Q. When you are saying the individual, the one who had just come up and talked to you?

**{¶ 39}** "A. The one who just talked to me.

**{¶ 40}** "Q. Okay.

**{¶ 41}** "A. Walked around the back of the truck.

**{¶ 42}** "Q. Your truck?

**{¶ 43}** "A. My truck, over to Maroune's car.

**{¶ 44}** "Q. Okay.

**{¶ 45}** "A. As soon as he gets there, not even two seconds after he got there, he grabs Maroune by the hoodie that he was wearing on the lapel.

**{¶ 46}** "Q. Okay.

**{¶ 47}** "A. And slams him against the car.

**{¶ 48}** "Q. Okay.  Does Maroune stay standing?

**{¶ 49}** "A. Maroune looks terrified.

**{¶ 50}** "Q. Okay.  Is he on his feet, though?

**{¶ 51}** "A. Maroune is on his feet.

**{¶ 52}** "Q. Okay.

**{¶ 53}** "A. As soon as he slammed him against the car, Maroune looks at me.

**{¶ 54}** "Q. Okay.

**{¶ 55}** "A. Looks very, very scared.

**{¶ 56}** "Q. Okay.  What do you see the individual do?

**{¶ 57}** "A. He starts kind of like not really fighting with him, but trying to get away.

**{¶ 58}** "Q. Maroune does?

**{¶ 59}** "A. Maroune does.

**{¶ 60}** "Q. Okay.

**{¶ 61}** "A. That's when the one that grabbed him reaches up with a pistol and hits him on the top of the head.

**{¶ 62}** "Q. Okay.  Did you see where he got the pistol?

**{¶ 63}** "A. The pistol was like in this waistband.

**{¶ 64}** "Q. Okay.

**{¶ 65}** "A. Because when he grabbed Maroune and hit him against the car, he leaned back.

**{¶ 66}** "Q. Okay.  Could you see at the time he leaned back - -

**{¶ 67}** "A. No.

**{¶ 68}** "Q. - - could you see what he was pulling?

**{¶ 69}** "A. No.  I didn't see a firearm.  I didn't see a knife.  I didn't see anything at that time.

**{¶ 70}** "Q. When if at any point could you see?

**{¶ 71}** "A. I saw the firearm as soon as he lifted it up over his head and hit Maroune in the head with it.

**{¶ 72}** "Q. Okay.  So he hit Maroune in the head with it.

**{¶ 73}** "Where is Maroune at this point?

**{¶ 74}** "A. Maroune, as soon as after he got hit on the top of the head, fell down to the ground.

**{¶ 75}** "Q. Okay.

**{¶ 76}** "A. He was out of sight.

**{¶ 77}** "Q. Okay.

**{¶ 78}** "A. That was the last I seen of Maroune.

**{¶ 79}** "Q. How many strikes did you see?

**{¶ 80}** "A. Only one.

**{¶ 81}** "Q. He struck him where?

**{¶ 82}** "A. He hit him on the top of the head, and Maroune immediately went forward and down.

**{¶ 83}** "Q. Okay.

**{¶ 84}** "A. As soon as that had happened, I had already grabbed my gun.

**{¶ 85}** "Q. Okay.

**{¶ 86}** "A. I took aim. I told him to freeze. He had his gun aimed down at Maroune, so I fired.

**{¶ 87}** "He already showed that he was doing bodily harm to another individual. I know Maroune."

**{¶ 88}** Tr. at 154; 155-156; 159-162.

**{¶ 89}** Cornell Wallace testified at trial:

**{¶ 90}** "Q. You are facing each other, and at some point he has reached in the car to put the cigarettes in?

**{¶ 91}** "A. Yes.

**{¶ 92}** "Q. What does he do after he puts the cigarettes in the car?

**{¶ 93}** "A. He not all the way in, but he come back out; and he start pulling money out to give me the money for them.

**{¶ 94}** "Q. Okay. So he reaches into his pocket?

**{¶ 95}** "A. Yes.

**{¶ 96}** "Q. And when he starts pulling money out, does he give you the money?

**{¶ 97}** "A. Not yet.  Well, when he pulled it out, he gave it to me.

**{¶ 98}** "Q. Okay.

**{¶ 99}** "A. He started to give it to me, but he is taking a long time in getting the money, you know what I'm saying, or whatever.

**{¶ 100}** "Q. Okay.  What is he doing?

**{¶ 101}** "A. He had like two piles of money.  He has some big money and he has some little money, and he was trying to find the little money to give to me.

**{¶ 102}** "Q. Okay.  What were you selling the cigarettes for?

**{¶ 103}** "A. Like $20 or $10 or something like that.

**{¶ 104}** "Q. Okay.  What happens while he is doing that?

**{¶ 105}** "A. Robinson came back from behind while we was sitting right there and just started whiling him up.

**{¶ 106}** "Q. Whiling up, what do you mean by that?

**{¶ 107}** "A. Like grabbed the dude and hit him.

**{¶ 108}** "Q. Okay.  What do you do when that happens?

**{¶ 109}** "A. I am shocked.  I'm like oh.  So then I am backing up a little bit.

**{¶ 110}** "Q. Okay.

**{¶ 111}** "A. And I see this dude in his pickup truck.  He been sitting there the whole time.  And I look over like by him and he got a gun.

**{¶ 112}** "Q. Uh-huh.

**{¶ 113}** "A. And I see the gun and I'm like whew, and then I hear a shot go off.

**{¶ 114}** "Q. And what do you do?

**{¶ 115}** "A. I just run.  I bounced.  I keep running and running and running.

**{¶ 116}** "And then I see these people and I give them $50 to take me home."

**{¶ 117}** Tr. at 231-233.

**{¶ 118}** Officer Jason McCune of the Massillon Police Department then testified he responded to the residence where Appellant was subsequently apprehended, and Appellant's own admission to being shot. Tr. at 250-252.

**{¶ 119}** Based upon the above testimony and the record, we find Appellant's conviction for felonious assault with an attendant firearm specification is not against the manifest weight nor the sufficiency of the evidence.  Eyewitness testimony and the testimony of Appellant's co-defendant demonstrate Appellant approached Maroune from behind with a weapon and inflicted serious physical injury to his person with a gun.

**{¶ 120}** Appellant's sole assignment of error is overruled.

**{¶ 121}** The judgment of the Stark County Court of Common Pleas is affirmed.

By: Hoffman, P.J.

Wise, J. and

Delaney, J. concur                          s/ William B. Hoffman_____
                                            HON. WILLIAM B. HOFFMAN


                                            s/ John W. Wise_____
                                            HON. JOHN W. WISE


                                            s/ Patricia A. Delaney_____
                                            HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO,                          :
                                        :
    Plaintiff-Appellee,                 :
                                        :
v.                                      :            JUDGMENT ENTRY
                                        :
ANDREW D. ROBINSON,                     :
                                        :
    Defendant-Appellant.                :            Case No. 2011CA00061

For the reasons stated in our accompanying Opinion, the judgment of the Stark County Court of Common Pleas is affirmed.  Costs to Appellant.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ John W. Wise_____
HON. JOHN W. WISE


s/ Patricia A. Delaney_____
HON. PATRICIA A. DELANEY