[Cite as *State v. Jefferson*, 2011-Ohio-6471.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-0010 |
| CLYDE ALEX JEFFERSON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal appeal from the Richland County
Court of Common Pleas, Case No. 09-CR-
913H

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 14, 2011

APPEARANCES:

For Plaintiff-Appellee           For Defendant-Appellant

ANDREW BENOIT                   KRISTIN E. BROWN
JILL COCHRAN                     Calhoun, Kademenos & Childress, L.P.A.
Richland County Prosecutor's Office    Ste. 200
38 South Park Street             6 West third Street
Mansfield, OH 44902             Mansfield, OH 44901

*Gwin, P.J.*

{1}     Defendant-appellant Clyde Jefferson appeals his convictions and sentences in the Richland County Court of Common Pleas on three counts of trafficking in drugs, each a felony of the fifth degree. Plaintiff-appellee is the State of Ohio.

STATEMENT F THE FACTS AND CASE

{2}     John Hawkins, aka C.I. 0801, had a deal with Metrich to attempt to buy drugs. In exchange, he would be paid $50.00 for every successful buy. In May 2008, Mr. Hawkins went to Metrich officers and told them that he could make purchases from a dealer known to him as Bumpy J, later identified as appellant. Mr. Hawkins had met appellant a week to a week and a half prior to the first controlled buy.

{3}     On May 19, 2008, Mr. Hawkins went to the Metrich unit and met with Officers Steve Blust, Keith Porch and Perry Wheeler in order to conduct a controlled buy from appellant. As required by procedure, the detectives performed a thorough search of Mr. Hawkins and the vehicle he was driving that day. After the search, Mr. Hawkins was fitted with a wire, which was turned on and tested by the officers. The CI does not have the ability to turn off the wire at any point and the listening officers would detect any tampering with the instrument. Mr. Hawkins was then given money to purchase the drugs. The money was photocopied. The officer making the copy then initialed and dated the photocopy for the file.

{4}     Mr. Hawkins drove to the target address. Metrich officers followed behind him in two separate vehicles. One vehicle contained a single officer who was watching the transaction. The other vehicle contained a driver and the "buy controller." It was the job of the buy controller to take notes about the transaction and the information heard

on the wire to compare to the statement that would be given by the informant later during debriefing. All of the officers were able to hear the transaction via the wire worn by Mr. Hawkins.

{5} Mr. Hawkins drove to the address of 765 Floral Court. This apartment complex with four units is located on the corner of two streets. The apartment complex also has the address of 765 Bums Street in the emergency dispatch system. Mr. Hawkins parked his vehicle and exited the car. He approached the apartment from the back and went up the back stairs. He was seen entering an apartment on the right.

{6} Upon entering the unit, Mr. Hawkins spoke with a woman named Ruth Ann. Ruth Ann was introduced to Mr. Hawkins as appellant's wife. Mr. Hawkins discussed the purchase with Ruth Ann and handed her the money. Ruth Ann handed Mr. Hawkins two foil balls of heroin for fifty dollars. Mr. Hawkins indicated that Ruth Ann received the drugs from appellant. Further, Mr. Hawkins had called appellant previously and arranged the sale.

{7} After completing the transaction, Mr. Hawkins left the apartment, returned to his vehicle, and drove back to Metrich. The Metrich officers followed him. At Metrich, the drugs were turned over to officers and the wire was deactivated and removed. Mr. Hawkins and his vehicle were searched. Mr. Hawkins was then debriefed. A statement was taken and compared to the controller's notes about the drug transaction. No contraband was found on Mr. Hawkins or in his vehicle and his statement was consistent with the audio from the transaction. Mr. Hawkins was shown a photo array containing six photographs. Mr. Hawkins was able to positively identify appellant as Bumpy J, the person he was dealing with in the purchase of the heroin. The suspected

heroin was submitted to the lab and determined to be heroin, a Schedule 1 drug, in the amount of .11 grams.

{8} On May 20, 2008, Mr. Hawkins returned to Metrich and indicated that he could perform a second buy from appellant. Mr. Hawkins and his vehicle were searched and he was fitted with a wire. Mr. Hawkins then drove his vehicle, followed by Metrich officers, to the same address where he had purchased from appellant the previous day. He parked in the parking lot while Metrich officers parked nearby to observe and monitor the audio.

{9} During this transaction, Mr. Hawkins testified that he gave the money directly to appellant and appellant gave him the heroin. There was an argument over the amount of heroin given to Mr. Hawkins. There had been a telephone discussion regarding what Mr. Hawkins intended to purchase. Appellant had only given Mr. Hawkins one foil ball of heroin and Mr. Hawkins had expected two. They renegotiated and were able to seal the deal. The weight in the single foil ball was the same as the combined amount of the two foil balls from the previous day.

{10} Mr. Hawkins testified that Ruth Ann was present in the apartment on this day as well, but merely walked in and out of the room. He did not engage in any drug negotiation or transaction with Ruth Ann on this date. A third person was present during the transaction. Mr. Hawkins observed this white male pull out a bundle of more than one hundred hits of heroin. Upon leaving the apartment after the drug transaction, Mr. Hawkins informed the Metrich officers that there was a white male present with more than one hundred hits of heroin.

{11}    Mr. Hawkins then entered his vehicle and returned to the Metrich office, followed by one of the Metrich vehicles. The other Metrich vehicle remained at the location of 765 Floral Court/Bums Street and waited to see if the white male would leave. An undetermined time later, the white male did leave and the Metrich vehicle followed him. The Metrich officer was able to observe the male commit a traffic violation and called for a marked vehicle to perform a traffic stop. A marked vehicle made a traffic stop of the white male and the vehicle was eventually searched as well as the male, identified as T. Thornsberry.  However, no drugs were found.

{12}    Mr. Hawkins turned over the foil ball of suspected heroin, was searched and debriefed. His vehicle was also searched. No contraband was found on Mr. Hawkins or in his vehicle and no inconsistencies were noted in his statement. The suspected heroin was turned over to the lab and was confirmed to be .11 grams of heroin.

{13}    A third buy was conducted on May 22, 2008. Only one Metrich car was used during this transaction. Mr. Hawkins came to the Metrich office. He was searched thoroughly, as was his vehicle. Mr. Hawkins was given buy money, this time consisting of two twenty dollar bills. Instead of heroin, Mr. Hawkins intended to purchase two twenties of crack cocaine.

{14}    Mr. Hawkins drove to the address of 765 Floral Court/Bums Street, taking a direct route, with the Metrich vehicle behind him. Appellant was not present at the address when Mr. Hawkins arrived. Ruth Ann attempted to call appellant. Mr. Hawkins told Ruth Ann that he wanted to get forty of "hard" off the appellant, meaning that he wanted to purchase forty dollars of crack cocaine. Ruth Ann was unable to reach

appellant by telephone. Appellant arrived at the apartment a few moments later. However, he did not have any drugs at that time as he had not "re-upped" and was waiting for more drugs to arrive, presumably from his supplier.

{15} When more drugs did not arrive in a timely manner, Mr. Hawkins told appellant that he had to leave due to a construction job and left the apartment. Mr. Hawkins indicated that this was an excuse; he did not have any current construction jobs, but did not want to keep the Metric officers waiting. He entered his vehicle and returned to Metrich. Mr. Hawkins was searched along with his vehicle, the wire and money were collected and then Mr. Hawkins left Metrich.

{16} Mr. Hawkins returned an hour or so later with the intention to try to carry out the buy. The entire procedure was started again with a search of Mr. Hawkins and his vehicle. The wire was replaced and he was given the buy money for a second time Mr. Hawkins and the Metrich vehicle returned to 765 Floral Court/Burns Street and once more Mr. Hawkins entered appellant's apartment. Appellant was there on this occasion and was engaged in cutting someone's hair. Appellant pointed to Ruth Ann so Mr. Hawkins gave the money to her. After appellant had finished the barbering job, appellant went into another room, came back, and handed Mr. Hawkins the crack cocaine.

{17} Mr. Hawkins returned to Metrich, with the Metrich officers following behind him. Upon return, Mr. Hawkins turned over the suspected drugs, had the wire deactivated, submitted to a search of his person and vehicle and then made out a statement. No contraband was found and his statement was consistent with the audio

from the transaction. The suspected cocaine was submitted to the lab and was determined to be .43 grams of cocaine base, a Schedule II drug.

{18} On December 11, 2009, appellant was indicted on three counts of trafficking in drugs, two counts for heroin and one count for crack cocaine. Each of these offenses was a felony in the fifth degree. Appellant's jury trial commenced on December 20, 2010 and lasted for two days. The jury found appellant guilty of all three counts in the indictment. A sentencing hearing was held on the same day. The trial court sentenced appellant to consecutive terms of eight months on each count, for a total sentence of twenty-four months.

{19} Appellant has timely appealed raising the following three assignments of error,

{20} "I. APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{21} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING CONSECUTIVE RATHER THAN CONCURRENT SENTENCES, FAILED TO MAKE THE STATUTORY FINDINGS REQUIRED BY R.C. 2929.14(E)(4), AND THE SENTENCES ARE CONTRARY TO LAW.

{22} "III. THE TRIAL COURT'S DECISION TO ORDER CONSECUTIVE RATHER THAN CONCURRENT SENTENCES WAS NOT SUPPORTED BY THE RECORD."

I.

{23} In his First Assignment of Error, appellant argues that his convictions are based upon insufficient evidence and are against the manifest weight of the evidence. We disagree.

**{24}** Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017 at ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720 at ¶ 68

**{25}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386-387, 678 N.E .2d 541, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997–Ohio–355, 684 N.E.2d 668. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211.(Internal quotation marks omitted). However, an appellate court may not merely substitute its view for that of the jury, but must find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins,* supra 78 Ohio St.3d at 387. (Internal quotation marks and citations omitted). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**{26}**   In the case at bar, appellant was charged with selling or offering to sell heroin and crack cocaine in violation of R.C. 2925.02(A)(1).

**{27}**   As noted in the Statement of Facts, supra the informant testified that he obtained the drugs in question from appellant. Sergeant Keith Porch testified that he monitored the listening device worn by appellant during the three transactions. Sergeant Porch verified and corroborated appellant's version of event. Further, the jury was permitted to hear the actual recordings of each of the three transactions.

**{28}**   Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, syllabus 1.

**{29}**   In the case at bar, reasonable minds could find, beyond a reasonable doubt, that appellant sold or offered to sell heroin and crack cocaine. Upon a careful review of the record and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found appellant guilty of three counts of trafficking in controlled substances.

**{30}**   We conclude the jury, in resolving the conflicts in the evidence, did not create a manifest injustice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational juror could have found beyond a reasonable doubt that appellant had sold or offered to sell heroin and crack cocaine as alleged in the Indictment.

**{31}** Accordingly, appellant's convictions are not against the manifest weight or the sufficiency of the evidence.

**{32}** Appellant's First Assignment of Error is overruled.

## II & III

**{33}** Appellant's Second and Third Assignments of Error raise common and interrelated issues; therefore, we will address the arguments together.

**{34}** In his Second Assignment of Error appellant argues that his consecutive sentences in this case are contrary to the law due to a failure by the trial court to make statutory findings required by R.C. 2929.14(E)(4). In his Third Assignment of Error appellant maintains that consecutive sentences were not supported by the record.

**{35}** In a plurality opinion, the Supreme Court of Ohio established a two-step procedure for reviewing a felony sentence. *State v. Kalish,* 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step "is satisfied," the second step requires the trial court's decision be "reviewed under an abuse-of-discretion standard." Id.

**{36}** The relevant sentencing law is now controlled by the Ohio Supreme Court's decision in *State v. Foster,* i.e. " * * * trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." 109 Ohio St.3d 1, 30, 2006-Ohio-856 at ¶ 100, 845 N.E.2d 470, 498.

**{37}** In the first step of our analysis, we review whether the sentence is contrary to law. Appellant was sentenced for three counts of trafficking in drugs, each a felony of the fifth degree. Upon conviction for a felony of the fifth degree, the potential sentence that the trial court can impose is six, seven, eight, nine, ten, eleven, or twelve months. R.C. 2929.14 (A)(5). In the case at bar, appellant was sentenced to a term of eight months of each count, consecutively, for an aggregate prison term of twenty-four months.

**{38}** Upon review, we find that the trial court's sentencing on the charges complies with applicable rules and sentencing statutes. The sentences were within the statutory sentencing range. Furthermore, the record reflects that the trial court considered the purposes and principles of sentencing and the seriousness and recidivism factors as required in Sections 2929.11 and 2929.12 of the Ohio Revised Code and advised appellant regarding post release control. Therefore, the sentences are not clearly and convincingly contrary to law.

**{39}** Having determined that the sentence is not contrary to law we must now review the sentence pursuant to an abuse of discretion standard. *Kalish* at ¶ 4; *State v. Firouzmandi,* supra at ¶ 40. In reviewing the record, we find that the trial court gave careful and substantial deliberation to the relevant statutory considerations.

**{40}** The failure to indicate at the sentencing hearing that the court has considered the factors in R.C. 2929.11 and 2929.12 does not automatically require reversal. *State v. Reed,* 10th Dist. No. 09AP–1163, 2010–Ohio–5819, ¶ 8. "When the trial court does not put on the record its consideration of R.C. 2929.11 and 2929.12, it is presumed that the trial court gave proper consideration to those statutes." Id.*,* citing

*Kalish* at ¶ 18, fn. 4. "The Code does not specify that the sentencing judge must use specific language or make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors." *State v. Arnett,* 88 Ohio St.3d 208, 215, 2000–Ohio–302.

**{41}** Further the Supreme Court of Ohio held in *State v. Hodge,* 128 Ohio St.3d 1, 2010–Ohio–6320, "For all the foregoing reasons, we hold that the decision of the United States Supreme Court in *Oregon v. Ice* [(2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517], does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *State v. Foster.* Because the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." See, *State v. Fry*, Delaware App. No. 10CAA090068, 2011-Ohio-2022 at ¶ 16-17.

**{42}** In the case at bar, the state in requesting maximum consecutive sentences informed the trial court of appellant's criminal history extending back to the 1970's including convictions for rape, robbery, breaking and entering, receiving stolen property, failure to register as a sex offender, and possession of drugs. The state also cited the fact that appellant was facing charges in a pending federal case.

**{43}** We find the trial court properly considered the purposes and principles of sentencing set forth in R.C. 2929.11, as well as the applicable factors set forth in R.C. 2929.12, along with all other relevant factors and circumstances. While appellant may disagree with the weight given to these factors by the trial judge, appellant's sentence was within the applicable statutory range for a felony of the fifth degree and therefore,

we have no basis for concluding that it is contrary to law. Similarly, the trial court's consecutive sentence cannot be said to be an abuse of discretion given the circumstances here. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219 (an abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable.").

{44} Accordingly, we overrule appellant's Second and Third Assignment of Error.

{45} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Richland County, Ohio, is affirmed.

By Gwin, P.J.,

Wise, J., and

Delaney, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY

WSG:clw1128

[Cite as *State v. Jefferson*, 2011-Ohio-6471.]

IN THE COURT OF APPEALS FOR RICHLAND COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CLYDE ALEX JEFFERSON | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2011-CA-0010 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of

the Court of Common Pleas, Richland County, Ohio, is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIN

_____
HON. JOHN W. WISE

_____
HON. PATRICIA A. DELANEY