The STATE of Ohio, Appellee,

v.

CLAY, Appellant.

[Cite as *State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720.]

Court of Appeals of Ohio,
Fifth District, Stark County.

No. 2009–CA–00249.

Decided June 14, 2010.

634

636

John D. Ferrero, Stark County Prosecuting Attorney, and Ronald Mark Caldwell, Assistant Prosecuting Attorney, for appellee.

Eugene Cazantzes, for appellant.

GWIN, Presiding Judge.

{¶ 1} Defendant-appellant, Michael S. Clay, appeals from his convictions and sentences in the Stark County Court of Common Pleas on one count of burglary,

a felony of the second degree, in violation of R.C. 2911.12(A)(1); one count of retaliation, a felony of the third degree, in violation of R.C. 2921.05(B); and one count of menacing by stalking, a felony of the fourth degree, in violation of R.C. 2903.21(A). Plaintiff-appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} On March 13, 2008, Jacqulyn Serrano called the police to report that appellant walked into her house without permission. Serrano reported that appellant began yelling at her, threw a weight-lifting bench through a window, and shoved her to the ground. The police responded to Serrano's 9-1-1 call.

{¶ 3} Upon arriving at the scene, Alliance Police Officer Todd Aderholt observed Serrano's adult son, Robert Goad, sitting on the front step, noticeably upset and angry. Goad told Officer Aderholt that appellant had just entered his mother's house and assaulted her. As Officer Aderholt was listening, Serrano came outside noticeably shaken, crying, and limping. She echoed what her son had said, saying that appellant had just busted her front door and assaulted her. Officer Aderholt looked throughout the house and had Serrano give a written statement of the events that had transpired. Serrano told the officer where the initial contact with appellant took place and showed him where the weight-lifting bench had been and where it then was located in the window frame of the dining-room area. Serrano told the officer that she was pushed down a couple of times and pointed to appellant's jacket, which he had left at the home. Serrano also pointed out a small dumbbell weight that appellant had picked up during the confrontation. Serrano told the officer that appellant did not have permission to be inside her house.

{¶ 4} Appellant does not dispute that he was in Serrano's residence on March 13, 2008. He claimed that he had resided with Serrano at the home in the past and that he actually stayed overnight on March 12, 2008. Appellant argued that he was there with the permission of Serrano.

{¶ 5} There was prior court involvement with respect to these parties. On March 5, 2008, appellant pleaded guilty to criminal trespass in the Alliance Municipal Court and was sentenced to three days in the Stark County jail. Appellant also had pleaded guilty to trespass and assault against Serrano and her family on September 11, 2006, and February 14, 2007.

{¶ 6} The Stark County Grand Jury indicted appellant on one count of burglary in violation of 2921.12(A)(2), one count of retaliation in violation of R.C. 2921.05(B), and one count of menacing by stalking in violation of R.C. 2903.211(A)(1)(B)(2)(C).

{¶ 7} Appellant's case proceeded to a jury trial on June 3, 2008.

{¶ 8} The state called Serrano to the stand during appellant's trial. During questioning she answered many of the questions with "I'm unsure" and "I cannot remember." Based upon her answers, the state requested that the court declare her a hostile witness. The court granted the state's request. The state then used the unsworn statement that she had given to Officer Aderholt on March 13, 2008, to refresh her recollection. The statement was marked as an exhibit and submitted to the jury. The state further submitted to the jury letters purportedly written by appellant to Serrano while he was incarcerated and awaiting trial.

{¶ 9} The jury found appellant guilty of burglary, retaliation, and menacing by stalking. On June 4, 2008, the court held a sentencing hearing. The court sentenced appellant to seven years' incarceration on the count of burglary; four years' incarceration on the count of retaliation; and 17 months' incarceration on the count of menacing by stalking.

{¶ 10} Appellant filed his notice of appeal of his conviction in a timely manner on June 30, 2008. That appeal was dismissed pursuant to *State v. Baker* (2008), 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163. A nunc pro tunc order was filed in the trial court citing the manner of conviction on April 8, 2009. A subsequent notice of appeal was filed on September 30, 2009, and this court granted leave to file a delayed appeal.

{¶ 11} Appellant raises three assignments of error for our consideration:

{¶ 12} "The trial court committed abuse of discretion during defendant's trial.

{¶ 13} "The trial court committed plain error in not giving a limiting instruction to the jury with respect to the victim's admitted unsworn statement.

{¶ 14} "The trial court erred in denying appellant's motion for acquittal, since the state failed to sustain its burden of proof."

I

{¶ 15} In his first assignment of error, appellant argues that the trial court erred by admitting into evidence Serrano's prior written statement, given to Officer Aderholt on March 13, 2008. Appellant further argues that the trial court erred by permitting the state to introduce into evidence appellant's prior convictions involving trespass and assault against Serrano, from September 11, 2006, and February 14, 2007.

{¶ 16} At trial appellant submitted a written jury instruction requesting that the court instruct the jury that Serrano's written statement was to be considered solely for impeachment purposes and not as substantive evidence of guilt. The trial court refused to give the instruction to the jury.

{¶ 17} "And my reason for that is that the, in the Court's opinion the document is not used to impeach the testimony of Ms. Serrano. She acknowledged that her signature was there and other matters which were set forth in the record and the gist of the argument and the proposed Jury instruction is that it was given for impeachment, and the Court does not find that that was the purpose."

{¶ 18} In *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 271, 569 N.E.2d 1056, the Supreme Court reaffirmed the longstanding test for appellate review of the admission of evidence:

{¶ 19} "Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. E.g., *State v. Sage* (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus. An appellate court, which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. *State v. Finnerty* (1989), 45 Ohio St.3d 104, 107, 543 N.E.2d 1233, 1237. As this court has noted many times, the term 'abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g., *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142."

{¶ 20} A reviewing court should be slow to interfere unless the court has clearly abused its discretion and a party has been materially prejudiced thereby. *State v. Maurer* (1984), 15 Ohio St.3d 239, 264, 15 OBR 379, 473 N.E.2d 768. The trial court must determine whether the probative value of the evidence or testimony is substantially outweighed by the danger of unfair prejudice or of confusing or misleading the jury. See *State v. Lyles* (1989), 42 Ohio St.3d 98, 537 N.E.2d 221.

{¶ 21} Evid.R. 801(D)(1) concerns the admissibility of prior out-of-court statements of a witness. According to the Staff Notes accompanying the Rule, "There are three types of statements by a witness which may qualify as non-hearsay under this subdivision and may be admissible as non-hearsay to prove the matters asserted in such prior statements. The rule does not limit the use of such statements either for impeachment or rehabilitative purposes. The statements may be used as substantive evidence of the matters asserted. The three categories are (a) prior inconsistent statements of a witness if made under oath subject to cross-examination, (b) prior consistent statements offered to rebut charges of recent fabrication or improper motive, and (c) prior identification by a witness."

{¶ 22} During the appellant's trial, Serrano claimed she was either unsure or did not remember the events when questioned by the prosecutor. When pressed, she refused to answer the prosecutor's questions.

{¶ 23} Serrano's written statement, given to Officer Aderholt on March 13, 2008, was not made under oath subject to cross-examination nor was it a statement of prior identification given by her. Additionally, her prior written statement was not consistent with her testimony and was offered to rebut an express or implied charge against her of recent fabrication or improper influence or motive. Accordingly, the written statement was not admissible under Evid.R. 801(D).

{¶ 24} However, the state attempted to refresh Serrano's memory by having her review her written previous statement. The practice of "refreshing" a witness's recollection by means of a writing is prescribed by Evid.R. 612, which states:

{¶ 25} "[I]f a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

{¶ 26} "[A] party may refresh the recollection of a witness under Evid.R. 612 by showing him or her a prior statement. However, a party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury. See 1 Giannelli & Snyder, Evidence (1996) 477–478, 574–575; *Dayton v. Combs* (1993), 94 Ohio App.3d 291, 298, 640 N.E.2d 863, 868." *State v. Ballew* (1996), 76 Ohio St.3d 244, 254, 667 N.E.2d 369. The writing used to refresh the witness's recollection is not admitted into evidence unless the adverse party requests admission, and in any event has no substantive evidentiary significance. Such writings may not be used to circumvent Evid.R. 607's limitations on the impeachment of witnesses. *Dayton v. Combs*, 94 Ohio App.3d at 298, 640 N.E.2d 863. Thus, Serrano's written statement could not be admitted by the state under the guise of refreshing her recollection. The prior out-of-court statement would be hearsay.

{¶ 27} "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is generally not admissible unless it falls within one of the exceptions to the rule against hearsay. Evid.R. 802, 803, 804; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383. Statements constitute hearsay only if they are offered to prove the truth of the

matters asserted in those statements. If those statements are offered for some other purpose, they are not inadmissible hearsay. *State v. Davis* (1991), 62 Ohio St.3d 326, 344, 581 N.E.2d 1362.

{¶ 28} Evid.R. 803(5) provides:

{¶ 29} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

{¶ 30} " * * *

{¶ 31} "(5) Recorded recollection.

{¶ 32} "A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party."

{¶ 33} According to this rule, foundational requirements for the use of a past recollection recorded include a showing that: (1) the witness has insufficient memory to accurately testify to crucial information, (2) that the witness can show through his or her testimony that the past recollection recorded was made or adopted when the matter was fresh in the witness's memory, and (3) the past recollection recorded correctly reflects the knowledge the witness had at the time it was recorded. See also *State v. Baston* (1999), 85 Ohio St.3d 418, 709 N.E.2d 128. The staff notes relating to Evid.R. 803(5) specify:

{¶ 34} "The rule makes explicit the requirement that the foundation for the introduction of the statement under this exception must be made by testimony of the witness himself. The assessment of trustworthiness is thereby focused upon the author and not upon some other person incident to the event."

{¶ 35} The statement in the case at bar consisted of facts of which the witness had firsthand knowledge; the statement was made by Serrano to the police on the night of the incident while the witness had a clear and accurate memory of it; the witness lacked a present recollection of the details of what had occurred that night. Serrano reluctantly agreed that what she had written in the report correctly reflected what had occurred in her home on March 13, 2008.

{¶ 36} Evid.R. 803(5), however, explicitly prohibits the introduction of the written statement into evidence unless done so by an adverse party. In the case at bar, Serrano was declared a hostile witness upon motion made by the prosecuting attorney. Evid.R. 611(C) provides, "Leading questions [may be used on direct examination] to develop [a witness's] testimony. * * * When a party

calls a hostile witness, an adverse party, or a *witness identified with an adverse party*, interrogation may be by leading questions." (Emphasis added.)

{¶ 37} "An adverse witness is a witness aligned with an opposing party because of a relationship or common interest in the litigation. *State v. Darkenwald*, Cuyahoga App. No. 83440, 2004-Ohio-2693, 2004 WL 1171876. While the difference between the terms 'hostile' and 'adverse' witnesses are often blurred, it is clear that the victim was an adverse witness in this case. Here, the victim was aligned with her husband. She was married to appellant and testified that she wanted to reconcile with him. The victim also testified that she did not want to testify against appellant." *State v. Fields*, Cuyahoga App. No. 88916, 2007-Ohio-5060, 2007 WL 2793331, ¶ 14.

{¶ 38} In the case at bar, when asked by the prosecuting attorney to read the written statement she had given to the police, Serrano refused. Clearly, Serrano was an "adverse witness" who was aligned with the appellant due to their past relationship. For whatever reason, she evidently did not want to testify against appellant. As Serrano was an adverse witness to the state, the state could properly move for the admission of her prior written statement pursuant to Evid.R. 803(5).

{¶ 39} Accordingly, the trial court did not err by admitting into evidence Serrano's prior written statement, given to Officer Aderholt on March 13, 2008.

{¶ 40} Appellant next argues that it was improper to admit prior criminal trespass and assault convictions from September 11, 2006, and February 14, 2007.[1]

{¶ 41} In the case at bar, the state filed a pretrial motion to admit the two additional convictions under Evid.R. 404(B) and argued that the conviction went to show appellant's motive, opportunity, intent, plan, and knowledge. The trial court reserved ruling on the motion until the start of the evidentiary portion of the trial. At that time, the trial court sustained the prosecution's motion and allowed the admission of the prior convictions.

{¶ 42} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *State v. Broom* (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, the Supreme Court held, in addition to those reasons listed in the Rule, that evidence of other bad acts may be admissible to prove identity.

---

1. Appellant conceded that the 2008 conviction was admissible since it formed the basis of the retaliation charge in the indictment.

However, because Evid.R. 404(B), and R.C. 2945.59, codifies an exception to the common law with respect to evidence of other acts of wrongdoing, they must be construed against admissibility, and the standard for determining admissibility of such evidence is strict, *Broom,* paragraph one of the syllabus.

{¶ 43} The admissibility of other acts evidence is carefully limited because of the substantial danger that the jury will convict the defendant solely because it assumes that the defendant has a propensity to commit criminal acts, or deserves punishment regardless of whether he or she committed the crime charged in the indictment. See *State v. Curry* (1975), 43 Ohio St.2d 66, 68, 72 O.O.2d 37, 330 N.E.2d 720. This danger is particularly high when the other acts are very similar to the charged offense, or of an inflammatory nature. *State v. Schaim* (1992), 65 Ohio St.3d 51, 60, 600 N.E.2d 661; *State v. Miley,* Richland App. Nos. 2005–CA–67 and 2006–CA–14, 2006-Ohio-4670, 2006 WL 2589816.

{¶ 44} Evidence of other acts is admissible if (1) there is substantial proof that the alleged other acts were committed by the defendant and (2) the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Carter* (1971), 26 Ohio St.2d 79, 83, 55 O.O.2d 130, 269 N.E.2d 115; *State v. Lowe* (1994), 69 Ohio St.3d 527, 530, 634 N.E.2d 616, citing *Broom,* 40 Ohio St.3d at 282–283, 533 N.E.2d 682; Evid.R. 404(B); and R.C. 2945.59; *Miley,* 2006-Ohio-4670, 2006 WL 2589816.

{¶ 45} In the case at bar, whether appellant committed a crime is the crux of the dispute. If a crime did in fact occur, no dispute exists that appellant was the perpetrator. In other words, no dispute exists as to identity. *Miley,* 2006-Ohio-4670, 2006 WL 2589816, at ¶ 73. As the identity of the person who had entered Serrano's home on March 18, 2008, was not an issue at trial, the other acts would not have been properly admitted to prove the appellant's scheme, plan, or system in committing the crimes charged. *Mt. Vernon v. Hayes,* Knox App. No. 09–CA–0007, 2009-Ohio-6819, 2009 WL 4985247, ¶ 26.

{¶ 46} Additionally, appellant did not claim mistake or accident; rather, he argued that he has resided with Serrano at the home in the past and that he actually stayed overnight on March 12, 2008. Appellant argued he was there with permission.

{¶ 47} However, appellant was also charged with menacing by stalking pursuant to R.C. 2903.211. The statute requires that the state prove that appellant engaged in "a pattern of conduct." Appellant's objection at trial was based solely on Evid.R. 404.

{¶ 48} We conclude that appellant's prior convictions from September 11, 2006, and February 14, 2007, were admissible to demonstrate a "pattern of conduct" under R.C. 2903.211.[2]

{¶ 49} However, even if the admission of one or both of appellant's prior convictions was error, we note that the admission of prior bad acts is deemed harmless unless there is some reasonable probability that the evidence contributed to the accused's conviction. *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382.

{¶ 50} We have reviewed the record, and we find that there is no reasonable probability that this evidence actually contributed to the appellant's conviction. As noted previously, appellant's prior conviction from 2008 was admissible. Accordingly, the jury was aware of the past conduct. Additionally, during the court's charge to the jury, it provided the following curative instruction relative to the prior convictions:

{¶ 51} "Prior conviction: Evidence was received that the Defendant was convicted of aggravated trespass, criminal trespass and assault. That evidence was received only for a limited purpose. It was not received and you may not consider it to prove the character of the Defendant in order to show that he acted in conformity with that character.

{¶ 52} "If you find that the Defendant was convicted of aggravated trespass, criminal trespass and assault, you may consider the evidence only for the following purposes:

{¶ 53} "1. The absence of mistake or accident.

{¶ 54} "2. The Defendant's motive, opportunity, intent or purpose, preparation or plan to commit the offense charged in this trial.

{¶ 55} "And 3. Knowledge of circumstances surrounding the offenses charged in this trial.

{¶ 56} "That evidence cannot be considered for any other purpose."

{¶ 57} We find that there was no prejudice to the appellant.

{¶ 58} Accordingly, appellant's first assignment of error is overruled.

## II

{¶ 59} In his second assignment of error, appellant argues that the trial court committed plain error by not giving the jury a limiting instruction with regard to Serrano's statement to police. We disagree.

---

**2.** The requirements of R.C. 2903.211 are more fully discussed in our disposition of appellant's third assignment of error.

{¶ 60} In criminal cases, when an objection is not raised at the trial court level, "plain error" is governed by Crim.R. 52(B), which states, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." An alleged error "does not constitute a plain error * * * unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.

{¶ 61} "[A]n appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" (Brackets sic.) *United States v. Marcus* (May 24, 2010), 560 U.S. ——, 130 S.Ct. 2159, 2164, 176 L.Ed.2d 1012, quoting *Puckett v. United States* (2009), —— U.S. ——, 129 S.Ct. 1423, 1429, 173 L.Ed.2d 266.

{¶ 62} The defendant bears the burden of demonstrating that a plain error affected his substantial rights. *United States v. Olano* (1993), 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508; *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14. Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error. *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240; *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus; *Perry* at ¶ 14.

{¶ 63} As noted in our disposition of appellant's first assignment of error, the trial court correctly concluded that the written statement given by Serrano to the police was not used for impeachment purposes. As we further noted, the written statement was admissible under the facts of this case pursuant to Evid.R. 803(5).

{¶ 64} Accordingly, we find no plain error affecting appellant's substantial rights.

{¶ 65} Appellant's second assignment of error is overruled.

### III

{¶ 66} In his third assignment of error, appellant argues that his convictions are based upon insufficient evidence. We disagree.

{¶ 67} Specifically, appellant argues with regard to the burglary charge that the prosecution did not introduce evidence that he entered the premises of Serrano by "force, stealth, or deception" since he was there by permission. With respect to the retaliation charge, appellant argues that there was not sufficient

evidence that he retaliated against Serrano by "force or threat of harm." Finally, appellant challenges the sufficiency of the evidence with respect to the menacing charge on the basis that the prosecution did not introduce sufficient evidence that he "knowingly caused [Serrano] to believe that he would cause physical harm" or "mental distress."

{¶ 68} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582 (reaffirming this standard).

{¶ 69} *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See id. at 318–319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel*, —— U.S. ——, 130 S.Ct. at 673–674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

{¶ 70} Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

{¶ 71} This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 317, 99 S.Ct. 2781, 61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a

reviewing court may not " 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " id. at 318–319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether *"any"* rational trier of fact could have made that finding, id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Nevils.*

{¶ 72} In the indictment in the case at bar, appellant was charged with burglary in violation of R.C. 2911.12(A)(3), which states:

{¶ 73} "(A) No person, by force, stealth, or deception, shall do any of the following:

{¶ 74} " * * *

{¶ 75} "(3) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."

{¶ 76} Officer Aderholt testified without objection that Serrano told him that appellant did not have permission to enter her home on the date in question. Further, as noted in our disposition of appellant's first assignment of error, Serrano's written statement given to the police was admitted into evidence. In that statement, she indicates that appellant forced his way into her home and that he did not have permission to be in her home.

{¶ 77} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of burglary.

{¶ 78} We hold, therefore, that the state met its burden of production regarding each element of the crime of burglary and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶ 79} The language of R.C. 2921.05, regarding retaliation states:

{¶ 80} "No person, purposely and by force or by unlawful threat of harm to any person or property, shall retaliate against a public servant, a party official, or an attorney or witness who was involved in a civil or criminal action or proceeding because the public servant, party official, attorney, or witness discharged the duties of the public servant, party official, attorney, or witness."

{¶ 81} Serrano indicated that after forcing his way into her home, appellant stated, "Why did you show up to court bitch? You made me lose my job." She further indicated that appellant then threw the weight bench through the window and shoved her down.

{¶ 82} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of retaliation. The jury could infer that appellant violently argued with her for showing up in court in the previous trespass prosecution against him, then assaulted her and threw a weight bench through a window. The actions and statements of appellant were sufficient to satisfy the "force or by unlawful threat of harm to any person" requirement of the statute.

{¶ 83} We hold, therefore, that the state met its burden of production regarding each element of the crime of retaliation and, accordingly, there was sufficient evidence to support appellant's conviction.

{¶ 84} R.C. 2903.211, menacing by stalking, states:

{¶ 85} "(A) No person by engaging in a pattern of conduct shall knowingly cause another to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.

{¶ 86} " * * *

{¶ 87} "(D) As used in this section:

{¶ 88} "(1) 'Pattern of conduct' means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents * * *."

{¶ 89} Because the statute does not specifically state what constitutes incidents "closely related in time," whether the incidents in question were "closely related in time" should be resolved by the trier of fact "considering the evidence in the context of all the circumstances of the case." *State v. Honeycutt,* Montgomery App. No. 19004, 2002-Ohio-3490, 2002 WL 1438648, ¶ 26, citing *State v. Dario* (1995), 106 Ohio App.3d 232, 238, 665 N.E.2d 759; *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10. "In determining what constitutes a pattern of conduct for purposes of R.C. 2903.211(D)(1), courts must [consider] every action * * * even if * * * 'some of the person's actions may not, in isolation, seem particularly threatening.' *Guthrie v. Long,* Franklin App. No. 04AP–913, 2005-Ohio-1541, 2005 WL 737402, ¶ 12; *Miller v. Francisco,* Lake App. No. 2002–L–097, 2003-Ohio-1978, 2003 WL 1904066, ¶ 11." *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 10.

{¶ 90} There is evidence in the record demonstrating that appellant did cause Serrano to be in fear of physical harm. "Physical harm" is defined in R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Appellant had pleaded guilty to aggravated assault and assault against the Serrano and her family on February 17, 2007. That

assault, coupled with the persistence and intensity of appellant's repeated contacts with her, could support a conclusion that appellant caused Serrano to be in fear of physical harm. These two incidents considered alone are, by definition, a "pattern of conduct" as contemplated by R.C. 2903.211 and, viewed in the context of appellant's actions over the course of the prior years, are overwhelming evidence of his pattern of conduct. Accord *Noah v. Brillhart,* Wayne App. No. 02CA0050, 2003-Ohio-2421, 2003 WL 21078077, ¶ 14; *Middletown v. Jones,* 167 Ohio App.3d 679, 2006-Ohio-3465, 856 N.E.2d 1003, ¶ 11.

{¶ 91} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of menacing by stalking.

{¶ 92} Appellant's third assignment of error is overruled.

{¶ 93} For the foregoing reasons, the judgment of the Stark County Court of Common Pleas Ohio is affirmed.

Judgment affirmed.

WISE and DELANEY, JJ., concur.