[Cite as *State v. Turner*, **2012-Ohio-345.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

       Plaintiff-Appellee

-vs-

JERMAINE TURNER

       Defendant-Appellant

|   |   |
|---|---|
| : | JUDGES: |
| : | Hon. W. Scott Gwin, P.J. |
| : | Hon. William B. Hoffman J. |
| : | Hon. John W. Wise, J. |
| : |   |
| : |   |
| : | Case No. 2011-CA-00137 |
| : |   |
| : |   |
| : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal appeal from the Stark County Court of Common Pleas, Case No. 2011CR0053 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | January 30, 2012 |

APPEARANCES:

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| JOHN FERRERO<br>Stark County Prosecutor<br>110 Central Plaza South, Ste. 500<br>Canton, OH 44702 | ANTHONY T. KAPLANIS<br>701 Courtyard Center<br>116 Cleveland Ave. N.W.<br>Canton, OH 44702 |

*Gwin, P.J.*

{1}     Appellant Jermaine Turner appeals his convictions after a jury trial on counts of kidnapping, felonious assault and disrupting public service.

STATEMENT OF THE FACTS AND CASE

{2}     On September 6, 2010 at 9:21 pm, Canton Police Officers Travis Pellegrino and Anthony Ankrom were dispatched for a "trouble call." When they arrived, they found Joanna Shollenberger on the front steps of her apartment building. Her face was bloodied and swollen. She had scratches on her legs and arms. Ms. Shollenberger identified appellant as her assailant.

{3}     After the medics arrived to treat Ms. Shollenberger, Officers Ankrom and Pellegrino, with the assistance of a canine unit, went looking for appellant, who had fled the scene when he saw the first cruiser pull up. They were unable to find him.

{4}     Ms. Shollenberger was taken by ambulance to Aultman Hospital and the officers continued their investigation in her apartment. In the stairwell leading up to her apartment as well as the apartment itself, they found blood smears and spatters on the walls. In the bathroom, they found a broken, disabled cell phone.

{5}     Ms. Shollenberger was treated at Aultman Hospital for her injuries including an orbital fracture of her eye, a left nasal bone fracture and multiple lacerations requiring stitches. Nurse Kelly Fisk, in a pain assessment done the next morning, rated Ms. Shollenberger's pain as ten on the pain scale, which would have been to her "really horrible pain." Ms. Shollenberger also reported that she was raped and a sexual assault examination (SANE) was completed.

**{6}** The next morning, Ms. Shollenberger was interviewed by Detective Gary Cochran and explained the events that resulted in her injuries. Ms. Shollenberger told Detective Cochran that she had been dating appellant for about two months and they had a sexual relationship. On September 6, 2010, he invited her to a Labor Day barbeque at his sister's house. He spent the night and they spent the Labor Day sipping "4 Lokos." On the way to the party, the couple stopped at a gas station for more liquor and cigarettes. While appellant was in the store, Ms. Shollenberger was talking to a "dude" who pulled up beside her and gave her his telephone number. Ms. Shollenberger related that when appellant came out of the store, he seemed upset about her encounter.

**{7}** The pair proceeded to the party and had a good time, "drinking, cooking, talking, laughing and stuff." Ms. Shollenberger drove the couple to her apartment, where they watched television and had consensual sex. When Ms. Shollenberger wanted to stop, appellant became upset, saying "I bet if I was that ni---- you was talking to, you know, you would want to, you know, cussing and stuff, basically have sex with me if I was him, and you don't like me, and you don't care about me, and things like that." The argument escalated and Ms. Shollenberger dressed and told appellant she would take him home. Appellant pushed the dresser and knocked all the stuff off it. Appellant hit Ms. Shollenberger in the face and pushed her against the wall. He grabbed her purse out of her hand and hit her with it. Ms. Shollenberger ran into the bathroom with her cell phone and tried to call 911. Appellant kicked in the bathroom door, punched and slapped her. When she got through to 911, he grabbed the phone snapping it in half, telling her he would kill her if he went to jail.

**{8}** Ms. Shollenberger kept trying to run away from the house; however appellant prevented her from leaving. He shut the windows, put a baby's gate across the bedroom door and kept punching and hitting her. Ms. Shollenberger made it down the first flight of steps, but appellant pushed her down the rest of them, grabbed her by the hair and made her go back up the steps. "I kept trying to go down the steps. He kicked me in my face several times."

**{9}** Finally, appellant told Ms. Shollenberger to go lie down in the room and take her clothes off. She complied because appellant told her he was going to break her jaw, kill her kids, "things like that." Every time I made one move, he was right there…He kept hitting me."

**{10}** Appellant got on top of Ms. Shollenberger and tried to have sex; however, he could not get an erection and started throwing up in a bucket. While he was throwing up, Ms. Shollenberger kept thinking of a way to get out of the room. When appellant went into the kitchen - after placing the baby's gate across the bedroom door – Ms. Shollenberger made her escape. She grabbed her shirt and ran down the steps with appellant chasing her.

**{11}** Ms. Shollenberger reached the bottom of the stairs and ran into the apartment of the downstairs neighbors, Terrence McCollum and Leanna Meely. It turned out that McCollum was appellant's cousin. McCollum was sitting in the kitchen and heard somebody say, "help." He went to the door and heard a little thud and when he opened the door to investigate, Ms. Shollenberger came "bursting in." Her face looked "bad" so McCollum sent his kids to their rooms. She had blood on her hands.

**{12}** Mr. McCollum went to talk with his cousin, appellant, to see "what was the problem, what was going on." Appellant explained, "There was an altercation. She had disrespected him earlier that day."

**{13}** Mr. McCollum called 911 because he "couldn't let nothing else happen to her like that" and police officers responded. Ms. Shollenberger estimated the incident with appellant lasted about an hour.

**{14}** An arrest warrant was issued for appellant charging him with rape, felonious assault, kidnapping and disrupting public service. Appellant was found around December 30, 2010 and arrested. After waiving his *Miranda* rights, he agreed to an interview by Detective Cochran.

**{15}** Appellant expressed surprise at being accused of rape. While willing to take the fall for an assault, he denied raping Ms. Shollenberger, explaining that because he was dating her, all sex they had or attempted to have was consensual. Appellant claimed he accidentally kicked Ms. Shollenberger in the eye and hit her one time, when all he meant to do was "kick my throw up on her."

**{16}** The Stark County Grand Jury indicted appellant on one count of rape, R.C. 2907.02(A)(2) [F1], one count of kidnapping, R.C. 2905.01(A)(3) [F1], one count of felonious assault, R.C. 2903.11(A)(1) [F2], and one count of disrupting public services, R.C. 2909.04(A)(1)[F4].

**{17}** Appellant's case proceeded to jury trial on May 9, 2011. The state presented seven witnesses, including the victim and several exhibits including photographs of Ms. Shollenberger at the hospital. At the close of the state's case,

appellant moved for judgment of acquittal. After the motion was denied, appellant rested without presenting any evidence.

{18} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of not guilty of rape, but guilty of the other charges - kidnapping, felonious assault and disrupting public service. The jury made a special finding as to the kidnapping charge that appellant did not release Ms. Shollenberger in a safe place, unharmed.

{19} Finding that there was a separate animus for the felonious assault, kidnapping and disrupting public service, the trial court sentenced appellant to ten years on the kidnapping, two years on the felonious assault to be served consecutively and six months for disrupting public service for a total of twelve years.

{20} Appellant filed an appeal and this matter is now before this Court for consideration. Assignment of error is as follows:

{21} "I. THE TRIAL COURT'S FINDING OF GUILTY OF KIDNAPPING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

I.

{22} In his sole assignment of error, appellant only challenges his conviction and sentence for kidnapping, claiming it was not supported by sufficient evidence and the jury lost its way in convicting him. Appellant primarily contends that the victim's testimony about the kidnapping was questionable and lacking credibility.

{23} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct.

2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.*; see also McDaniel v. Brown*, —— U.S. ——, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017 at ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720 at ¶ 68.

{24} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

{25} R.C. 2905.01(A)(3), the kidnapping statute, provides:

**{26}** "No person, by force, threat, or deception, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:

**{27}** "* * *

**{28}** "(3) To terrorize, or to inflict serious physical harm on the victim of another;

**{29}** "* * *

**{30}** "(C)(1) Whoever violates this section is guilty of kidnapping. Except as otherwise provided in this division or division (C)2) or (3) of this section, if an offender who violates division (A)(1) to (5), (B)(1), or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree."

**{31}** As set forth in the Statement of the Facts and Case, supra, the evidence presented at trial included the testimony of Ms. Shollenberger that she tried to leave after being assaulted, but that appellant pulled her back inside of the apartment and told her he would kill her if she tried to leave. She tried numerous times to leave only to be pulled back by her hair and beaten again.

**{32}** We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support appellant's conviction.

**{33}** "A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their

natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

{34} Although appellant cross-examined the witnesses and argued that the victim was not to be believed, and further that there was a lack of certain physical evidence such as hair collected from the scene, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison*, 49 Ohio St.3d 182, 552 N.E.2d 180(1990).

{35} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) citing *State v. Nivens*, 10th Dist. No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003- Ohio-958, at ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548(1964); *State v. Burke,* 10th Dist. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

{36} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury

did not create a manifest injustice by concluding that appellant was guilty of the crime of Kidnapping charged in the indictment.

{37} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{38} Accordingly, appellant's First Assignment of Error is denied.

{39} The judgment of the Court of Common Pleas, Stark County, Ohio is affirmed.

By Gwin, P. J.,

Hoffman, J., and

Wise, J., concur

_____

HON. W. SCOTT GWIN

_____

HON. WILLIAM B. HOFFMAN

_____

HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
            Plaintiff-Appellee         :
                                       :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
JERMAINE TURNER                        :
                                       :
                                       :
            Defendant-Appellant        :          CASE NO. 2011-CA-00137


    For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Stark County, Ohio is affirmed.  Costs to appellant.


_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. JOHN W. WISE