[Cite as *State v. Mahone*, 2012-Ohio-5461.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Julie A. Edwards, J. |
| -vs- | Case No. 12CAA030023 |
| GARY MAHONE | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Delaware County Court of
                            Common Pleas, Case No. 11CRI070392


JUDGMENT:                   Affirmed


DATE OF JUDGMENT ENTRY:     November 19, 2012


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant


CAROL HAMILTON O'BRIEN                SAMUEL H. SHAMANSKY
Delaware County Prosecuting Attorney  DONALD L. REGENSBURGER
GREGORY A. TAPOCSI                    523 South Third Street
Assistant Prosecuting Attorney        Columbus, Ohio 43215
140 N. Sandusky St., 3rd Floor
Delaware, Ohio 43015

*Hoffman, J.*

{¶1} Defendant-appellant Gary Mahone appeals his conviction for two counts of sexual battery entered by the Delaware County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} On July 15, 2011, Appellant and J.W. attended a work related promotional event where alcohol was served. Both Appellant and J.W. worked at Alum Creek RV, and had a friendly relationship, often going out together after work. At the party, both consumed alcohol.

{¶3} After the party concluded, several employees remained at the RV dealership to clean up and hang out in the break room. While drinking with Appellant, J.W. pulled her breasts out of her shirt and flashed Appellant, while covering her nipples. J.W. admits to acting flirtatiously with Appellant throughout the evening.

{¶4} At 10:00 p.m., J.W.'s live-in boyfriend arrived to drive her home. The two became involved in an argument, and it was determined J.W. would stay overnight at the dealership and continue partying. Eventually, everyone left the premises except J.W., at which point she telephoned Appellant and asked him to return.

{¶5} Upon arriving back at the premises, Appellant found J.W. in an upstairs office, laying on a fold-out bed. He indicated she was "pretty much passed out" when he returned. He testified he kissed her and stroked her, removing her pants, but she did not reciprocate at any point during their encounter. He testified she raised her hips off the bed in order for him to take off her pants. He stated her eyes were open, and she

was motioning with her legs and hips. He rolled her onto her back, performed oral sex, then had vaginal intercourse with her before ejaculating inside her vagina.

{¶6} J.W. testified she was unconscious during the sexual activity, and awoke to find Appellant saying her name and ejaculating on her. She stated she was wearing nothing but a shirt when she awoke. She later stated she had underwear on, but did not recall Appellant replacing her underwear.

{¶7} As a result of the incident, Appellant was indicted on two counts of rape, in violation of R.C. 2907.02, felonies of the first degree; and two counts of sexual battery, in violation of R.C. 2907.03(A)(3), felonies of the third degree.

{¶8} The matter came on for a trial to the court on January 19, 2012, Appellant having waived his right to a trial by jury. Following the presentation of the evidence, the trial court found Appellant not guilty of the two rape counts, but guilty of two counts of sexual battery, in violation of R.C. 2907.03(A)(3). The trial court scheduled the matter for sentencing. On February 29, 2012, via judgment entry, the trial court sentenced Appellant to a three year term of community control, community service, a fine and court costs. The trial court also classified Appellant a Tier III sex offender registrant.

{¶9} Appellant now appeals, assigning as error:

{¶10} "I. APPELLANT WAS CONVICTED IN THE ABSENCE OF EVIDENCE SUFFICIENT TO SUPPORT A FINDING OF GUILTY, IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE FOURTEENTH AMENDMENT OT THE UNITED STATES.

{¶11} "II. THE TRIAL COURT CONVICTED APPELLANT EVEN THOUGH IT DID NOT FIND THE STATE HAD PROVEN EACH ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT, IN VIOLATION OF HIS RIGHT TO DUE

PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES.

{¶12} "III. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF HIS RIGHT OF DUE PROCESS AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES."

I, II, and III.

{¶13} Appellant's assigned errors raise common and interrelated issues; therefore, we will address the arguments together.

{¶14} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.;* see also *McDaniel v. Brown,* 558 U.S.120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

{¶15} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St .3d 89, 684 N.E.2d 668, 1997–Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party

having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) at 1594.

{¶16} When a court of appeals reverses a judgment of a trial court on the basis the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id.*

{¶17} "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

{¶18} "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

**{¶19}** *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶20}** Appellant was convicted of two counts of violating R.C. 2907.03(A)(3), which reads:

**{¶21}** "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

**{¶22}** "***

**{¶23}** "(3) The offender knows that the other person submits because the other person is unaware that the act is being committed."

**{¶24}** Appellant testified at trial, when he arrived back at Alum Creek RV, he found J.W. laying on a fold-out bed, "pretty much passed out." The following exchange occurred at trial concerning Appellant's interview by the investigating police officer:

**{¶25}** "Q. And that interview was a fair and accurate representation of the interview that you gave with Detective Yates on the day in question, right?

**{¶26}** "A. Yes.

**{¶27}** "Q. Didn't you say that during that, I guess we'll say interview, the lights were off upstairs?

**{¶28}** "A. Yes.

**{¶29}** "Q. You also said that you felt [J.W.'s] hip muscles rising up during oral sex?

**{¶30}** "A. Yes.

**{¶31}** "Q. Listening to that interview, you didn't mention that at all during the interview with Detective Yates, correct?

**{¶32}** "A. Correct.

**{¶33}** "Q. You also didn't mention anything about [J.W.'s] eyes being open as well too?

**{¶34}** "A. Correct.

**{¶35}** "Q. You also didn't mention anything about [J.W.] gathering up her clothes and underwear?

**{¶36}** "A. Correct.

**{¶37}** "Q. You also didn't mention anything about [J.W.] supposedly grinding on your leg as well too?

**{¶38}** "A. Correct.

**{¶39}** "Q. You also talked about that [J.W.] grabbed your hand?

**{¶40}** "A. Yes.

**{¶41}** "Q. In the interview with Detective Yates, isn't it correct when I say that you told Detective Yates that you grabbed [J.W.'s] hand?

**{¶42}** "A. I said we held hands.

**{¶43}** "Q. I believe Detective Yates asked you - - at first you said you held hands, but then Detective Yates indicated, did you grab her hand, and you responded in affirmative; is that correct?

**{¶44}** "A. Yes, uh-huh.

**{¶45}** "Q. You also said during the course of your testimony there that, just to be clear, that you took [J.W.'s] pants off in this case, right?

**{¶46}** "A. Yes.

**{¶47}** "Q. You were that one who kissed her, you kissed her?

**{¶48}** "A. Her arm.

**{¶49}** "Q. She didn't respond to you, correct?

**{¶50}** "A. Correct.  I kissed her arm.

**{¶51}** "Q. You kissed her arm, she didn't respond?

**{¶52}** "A. Correct.

**{¶53}** "Q. Nothing - - well, let's go - - I'll ask a question toward the end about that.

**{¶54}** "You laid down, no response from her, correct, when you laid down next to her?

**{¶55}** "A. No response?

**{¶56}** "Q. She didn't say anything to you?

**{¶57}** "A. No.

**{¶58}** "Q. Instead you started stroking her arm, correct?

**{¶59}** "A. Stroking her hair.

**{¶60}** "Q. Stroking her hair.  What did you do to her arm?

**{¶61}** "A. Kissed her arm.

**{¶62}** "Q. Kissed her arm?

**{¶63}** "A. Yeah.

**{¶64}** "Q. She didn't say anything verbally at that point, right?

**{¶65}** "A. No.

**{¶66}** "Q. She also didn't respond to your advances at that time either, right?

**{¶67}** "A. No, correct.

**{¶68}** "Q. So from there, you then rolled her over; isn't that correct?

**{¶69}** "A. I motioned which way I wanted her to turn and she rolled over, I didn't use force.

**{¶70}** "Q. And this was in the dark room?

**{¶71}** "A. With a window with a light on the outside of the window, yes.

**{¶72}** "Q. But, you didn't mention any of this motion previously, right, to Detective Yates?

**{¶73}** "A. I tried to answer his questions as best as possible over three hours - -

**{¶74}** "Q. You didn't mention that though, did you?

**{¶75}** "A. Correct.

**{¶76}** "Q. From there you then removed her pants; is that correct?

**{¶77}** "A. Right.

**{¶78}** "Q. Is that before or after you kissed her?

**{¶79}** "A. After I kissed her arm.

**{¶80}** "Q. And she didn't respond to you as well too at that point?

**{¶81}** "A. She responded by raising her hips up.

**{¶82}** "Q. You didn't mention that to Detective Yates, did you?

**{¶83}** "A. No, sir.

**{¶84}** "Q. You then performed oral sex on her, and you said the only response you had, other than the hand, was her raising her hips up, correct?

**{¶85}** "A. I'm sorry.

{¶86} "Q. Raising her hips, I guess, was her next response to your actions there, right?

{¶87} "A. Yes.

{¶88} "Q. As you're performing oral sex on her, and then also from there, you said it proceeded to vaginal intercourse, right?

{¶89} "A. Yes.

{¶90} "Q. Once again, no verbal response from [J.W.] at this point, correct?

{¶91} "A. Correct.

{¶92} "Q. And then also you're having sex with her - - correct me if I'm wrong - - she's lying down, correct?

{¶93} "A. Yes.

{¶94} "Q. On her back?

{¶95} "A. Yes.

{¶96} "Q. You are the one who - - she's lying on her back, we'll leave it right there.

{¶97} "From there you ejaculated on her, you said, or in her?

{¶98} "A. On her?

{¶99} "Q. On her or in her, I guess I was confused.

{¶100} "A. In her.

{¶101} "Q. And she didn't say anything about giving you permission to do that?

{¶102} "Did she say - - did she give you permission to do that?

{¶103} "A. At the time just before it happened or when?

{¶104} "Q. Did she give you any verbal permission to do that, to ejaculate inside her?

{¶105} "A. She said she going to have sex with me earlier that day, yes.

{¶106} "Q. She said that she was going to have sex with you earlier in the day?

{¶107} "A. She told Michelle that either you have him or I will.

{¶108} "Q. But, she didn't say she was going to have sex with you that day, that was merely her statement; isn't that correct?

{¶109} "A. That - -

{¶110} "Q. Did you ever hear [J.W.] say the words to you, I want to have sex with you, in those words?

{¶111} "A. No, sir.

{¶112} "Q. During the entire time period when you came back to Alum Creek RV after she called you, you did not hear her make any verbal statement about wanting to have sex with; isn't that correct?

{¶113} "The only - - answer that, please.

{¶114} "A. She said said she would do me, quote, in the past, does that qualify?

{¶115} "Q. Well, you didn't mention anything about that to Detective Yates."

{¶116} Tr. at 199-204.

{¶117} Based upon the evidence set forth in the record, we find Appellant's convictions for sexual battery are neither against the manifest weight nor against the sufficiency of the evidence. The evidence demonstrates the trial court did not clearly lose its way in finding Appellant engaged in sexual conduct with J.W. while he knew or should have known J.W. was unaware the act was being committed.

**{¶118}** The judgment of the trial court is affirmed.

By: Hoffman, J. and

Gwin, P.J. concur,

Edwards, J. concurs separately

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ W. Scott Gwin_____
HON. W. SCOTT GWIN


_____
HON. JULIE A. EDWARDS

EDWARDS, J., CONCURRING OPINION

{¶119} I concur with the majority as to the disposition of this case but it is not clear to me that the majority addresses one of the arguments made by appellant.

{¶120} The majority did address the argument made by appellant that the State failed to prove appellant knew J.W. was unaware of the acts committed. The majority addresses this argument by quoting the transcript and concluding "…the trial court did not clearly lose its way in finding appellant engaged in sexual conduct with [J.W.] while he knew or should have known [J.W.] was unaware the act was being committed." I concur in this analysis.

{¶121} I find the majority did not clearly address the additional argument regarding the weight of the evidence made by appellant. Appellant argued that the state did not prove the appellant knew that J.W. only submitted because she was unaware the act was being committed. Appellant seems to be arguing that because J.W. had earlier indicated an interest in having sex with the appellant, the state could not prove the appellant knew that the only reason J.W. had sex with appellant was because she was unaware of the act being committed. Appellant seems to argue that an offender would not be guilty of sexual battery if the other person, though unaware of the sexual conduct being committed on him/her, had indicated earlier a willingness to have sex with the offender. In other words, appellant argues, appellant could have believed that J.W. was a willing participant in the sexual conduct even though unaware of its occurrence.

{¶122} But, I reject this argument based on the wording of the statute. The statute does not say that the state must prove the offender knew that the only reason

the victim submitted was because she was unaware of the activity. The statute says that the state must prove the offender knew that "the other person submits because the other person is unaware that the act is being committed." The statute does not say the offender must know that the other person submits <u>only</u> because the other person is unaware, but rather that the offender must know that the other person is submitting because the other person is unaware.

{¶123} Therefore, I conclude that it was sufficient for the state to prove that appellant knew J.W. was unaware of the act being committed in order to obtain a conviction for sexual battery. The statute clearly prohibits an offender from having sexual conduct with a person the offender knows is unaware of the sexual conduct.

<u>s/ Judge Julie A. Edwards_____</u>

Judge Julie A. Edwards

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                      :

                                     :

    Plaintiff-Appellee            :

                                     :

-vs-                           :          JUDGMENT ENTRY

                                     :

GARY MAHONE                :

                                     :

    Defendant-Appellant     :          Case No. 12CAA030023

For the reasons stated in our accompanying Opinion, the judgment of the trial court is affirmed.  Costs to Appellant.

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN

s/ W. Scott Gwin_____
HON. W. SCOTT GWIN

s/ Julie A. Edwards_____
HON. JULIE A. EDWARDS