[Cite as *State v. Williams*, 2014-Ohio-598.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
| --- | --- | --- |
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2013CA000165 |
| GREGORY DWAYNE WILLIAMS | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
                            Court of Common Pleas, Case No.2013 CR
                            0633

JUDGMENT:                   Affirmed

DATE OF JUDGMENT ENTRY:     February 18, 2014

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN FERRERO                          RODNEY BACA
STARK COUNTY PROSECUTOR               610 Market Avenue North
BY: RONALD MARK CALDWELL              Canton, OH 44702
110 Central Plaza South, Ste.
Canton, OH  44702

*Gwin, P.J.*

{¶1} Appellant Gregory Dwayne Williams ["Williams"] appeals his convictions and sentences for one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree and one count of domestic violence in violation of R.C. 2919.25(A), a misdemeanor of the first degree after a jury trial in the Stark County Court of Common Pleas.

### *Facts and Procedural History*

{¶2} Teasha Jenkins and Williams had a relationship that produced four children, ages nine through one year old. The couple was not living together at the time of the incident. Williams was in a separate relationship with another woman, A. E. About three weeks before the incident, A.E. had asked Williams to move out due, in part, to the growing hostilities between her and Jenkins. A.E. assumed that Williams was then living with his father after she had him leave her residence.

{¶3} During the evening of April 12, 2013, Williams and a couple friends had stopped by A.E.'s home to visit. While the three visitors were playing games, A.E. decided to go to bed around 10:00 p.m. She woke up in the middle of the night and determined that the three visitors had left. A.E. also noticed that her 2004 Ford Explorer was gone. She had not given Williams permission to take the vehicle, but immediately tried to call him to see if he had taken the vehicle. A.E. was unable to reach Williams, in part because he did not have a cell phone. Unable to contact Williams, A.E. opted to call the police and report her vehicle stolen. After making the report, A.E. went back to bed.

**{¶4}** At 2:44 a.m., the Stark County Sheriff's Department received a 911 call alerting them to a domestic situation at Jenkins's residence. Sheriff s Deputy Steve Miller found Jenkins outside of her residence, hysterical and crying. Miller saw that Jenkins lip was bleeding and that the she had been struck in the face. Jenkins told the deputy what had happened. Deputy Miller then surveyed her residence, noting that what he saw corroborated what Jenkins had told him. Jenkins told Deputy Miller that she had been sleeping with her children when she heard a loud bang downstairs. When she went to investigate, Jenkins noticed that the service door to the garage was open and Williams was standing there. Williams had gained entry into the garage by kicking in a door. Williams then entered the residence by pushing Jenkins aside. The two began arguing. The confrontation became physical when Williams punched Jenkins in the face. Jenkins tried to call 911. Williams pushed a table against her to prevent her from making the call, breaking a glass in the process. Jenkins managed to get free and run outside on her way to her duplex neighbor's residence. Williams ran after Jenkins grabbed her and brought her back to her residence. The neighbor, alerted to this physical altercation, called 911. Williams ran away before the police arrived, and Deputy Miller found only Jenkins and her children at the residence.

**{¶5}** Paramedics treated Jenkins's injuries, after they were photographed, and Jenkins agreed to take her children across the street to a relative's home for the night. As the police were wrapping up their investigation, they noticed a 2004 Ford Explorer parked suspiciously nearby the residence. Miller noticed that the windows to the vehicle were partially down despite the raining night. A check revealed that the vehicle belonged to A. E., whom police now knew was Williams' current girlfriend. This

development led Miller to suspect that Williams might still be in the area, a suspicion that was confirmed when the neighbor who had called 911 told him that Williams was seen going back into Jenkins's residence.

{¶6} Miller and other deputies heard noises inside Jenkins's residence, which was supposed to be vacant since Jenkins and her children were now staying at the home of a relative. The deputies repeatedly called to Williams to come out, but got no response. Officers from the Canton Police Department, including a canine unit, arrived on the scene in response to Evans's stolen vehicle being recovered. The police dog was let inside the residence, which immediately brought Williams outside. Williams told the police that Jenkins did not know he was coming over that night, and admitted that he kicked the back door in to gain entry, and did so because he was angry. When Jenkins confronted him, they got into an argument about A.E. and a pending court matter between them. Williams admitted that he struck Jenkins during this argument, and that he broke a glass. He further admitted that he restrained Jenkins as she screamed and scratched him. Finally, Williams told the police that he had arrived there by driving A.E.'s vehicle.

{¶7} Jenkins testified at trial, initially as a prosecution witness. However, as her testimony suggested she might have lied to the investigating officers and the grand jury, the trial court, out of an abundance of caution, appointed counsel for Jenkins to address the self-incrimination concerns. The trial court designated Jenkins a court's witness pursuant to Evid. R. 614, permitting both the state and the defense to cross-examine Jenkins. As a result, her testimony was punctuated with repeated and periodic assertions of her right against self-incrimination. Jenkins admitted in her testimony that

she confronted Williams that night when he appeared, arguing about A.E. and his relationship with her. In explaining the injury to her face, Jenkins testified that she struck Williams first, and that he responded by hitting her once in the face. She then accompanied Williams outside, who was holding their son who was tired. Jenkins said she then called 911, and went to her neighbor's home to call her mom and not to call 911. She asserted that Williams did not push or shove her back into her home. Jenkins admitted that she told the police that Williams had grabbed her and dragged her back inside, but that she lied because of Williams' relationship with A.E. Jenkins confessed her continued love for Williams and her desire to remain with him. She was angry with him, however, for seeing A.E. Jenkins testified that she opened the door for Williams, and had allowed him to come over at other times, which sometimes resulted in the couple having sex. Jenkins did state, however, that Williams did not have permission to go back into her residence after he had fled due to the imminent arrival of the police.

{¶8} The Stark County Grand Jury returned an indictment that charged Williams, with one count each of burglary, domestic violence, abduction, and unauthorized use of a motor vehicle. Based upon the evidence presented during his trial, the jury found Williams guilty of the offenses of burglary and domestic violence, but not guilty of the offenses of abduction and unauthorized use of a motor vehicle.

### *Assignment of Error*

{¶9}   Williams raises ones assignment of error,

{¶10} "I. THE EVIDENCE IS INSUFFICIENT TO SUSTAIN THE CONVICTION OF BURGLARY AND DOMESTIC VIOLENCE AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*Analysis*

{¶11} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶12} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶13} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a

"'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, supra, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶14}** To find Williams guilty of domestic violence the trier of fact would have to find that he knowingly caused or attempted to cause physical harm to a family or household member. R.C. 2919.25(A). Physical harm to persons is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."

"Family or household member" includes "the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent." R.C. 2919.25(F)(1)(a)(iii).

{¶15} In the case at bar, the parties agree that Williams and Jenkins have four children together. At trial, Deputy Miller testified that Jenkins was hysterical and crying upon his arrival. She related that Williams had broken into her home late at night, awakening her from her sleep. When Jenkins came upon Williams at the kitchen door that led into the garage, Williams pushed her aside and immediately began arguing with her. Williams admitted to police that he broke into Jenkins's home because he was angry with her. Williams hit Jenkins in the face during this argument, and physically restrained her from calling 911. Jenkins nonetheless managed to break free, and run to her neighbor's residence to call 911. Williams, however, was able to restrain her and drag her back to her home. This neighbor called 911, and Williams fled the residence. As the police took Jenkins's statement, saw that her injuries were treated, and made sure that she left for a safe place for the night, Williams stayed in the neighborhood. After Jenkins had left the residence, Williams snuck into Jenkins's empty home. When the police were alerted to Williams' retreat to the residence, they called for him to come out. Williams only gave up his pretext of not being there when the police dog was sent inside the home.

{¶16} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Williams committed the crime of domestic violence. We hold, therefore, that the state met its burden of production regarding each element of the crime of domestic violence

and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Williams' conviction.

{¶17} Williams was also convicted of burglary in violation of R.C. 2911.12(A)(2), which states:

No person, by force, stealth, or deception, shall do any of the following:

Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

{¶18} In the case at bar, Jenkins was awakened from sleep by a "bumping" noise from downstairs that was loud enough to awaken her baby. (T. at 21). Jenkins went downstairs to investigate. Jenkins noticed that the service door to the garage was open and Williams was standing there. Jenkins told Deputy Miller that Williams pushed her aside and entered her home. (T. at 80). Williams admitted to Deputy Miller that he kicked in the door. He further admitted an argument ensued and he hit Jenkins. (T. at 87). Jenkins testified that Williams did not have permission to go inside her house after she and the children left after the incident to stay with relatives. (T. at 47).

{¶19} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Williams committed the crime of burglary. We hold, therefore, that the state met its burden of production regarding each element of the crime of burglary and, accordingly,

there was sufficient evidence to submit the charge to the jury and to support Williams' conviction.

{¶20} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai,* 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard,* 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke,* 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶21} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶22} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL

29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, supra.

In *Cross v. Ledford,* 161 Ohio St. 469, 477, 120 N.E. 2d 118 (1954), the Supreme Court further cautioned,

The mere number of witnesses, who may support a claim of one or the other of the parties to an action, is not to be taken as a basis for resolving disputed facts. The degree of proof required is determined by the impression which the testimony of the witnesses makes upon the trier of facts, and the character of the testimony itself. Credibility, intelligence, freedom from bias or prejudice, opportunity to be informed, the disposition to tell the truth or otherwise, and the probability or improbability of the statements made, are all tests of testimonial value. *Where the evidence is in conflict, the trier of facts may determine what should be accepted as the truth and what should be rejected as false.* See *Rice v. City of Cleveland*, 114 Ohio St. 299, 58 N.E.2d 768.

161 Ohio St. at 477-478. (Emphasis added).

A fundamental premise of our criminal trial system is that "the jury is the lie detector." *United States v. Barnard,* 490 F.2d 907, 912 (9th Cir. 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the "part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men." *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891).

*United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267(1997).

**{¶23}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost their way nor created a miscarriage of justice in convicting Williams of the charges.

**{¶24}** Based upon the foregoing and the entire record in this matter, we find Williams' convictions were not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the witnesses. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Williams' guilt.

{¶25} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of each crime beyond a reasonable doubt.

{¶26} Williams' sole assignment of error is overruled.

{¶27} The judgment of the Stark County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Wise, J., and

Baldwin, J., concur