[Cite as *State v. Mennifield*, 2015-Ohio-4660.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin,, P.J. |
|  | : | Hon. Patricia A. Delaney, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-15 |
| LEON A. MENNIFIELD | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No. 2014
                             CR0100R

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 9, 2015

APPEARANCES:

For: Plaintiff-Appellee                For: Defendant-Appellant

DANIEL ROGERS                          WILLIAM CRAMER
Assistant Prosecuting Attorney         470 Ole Worthington Road, Ste. 200
38 S. Park Street                      Westerville, OH 43082
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}    Appellant Leon A. Mennifield ["Mennifield"] appeals his conviction and sentence after a jury trial in the Richland County Court of Common Pleas on one count of forgery a felony of the fifth degree pursuant to R.C. 2913.31(A)(3).

*Facts and Procedural History*

{¶2}    On September 6, 2013, an African American male entered a Fast Cash store in Mansfield, Ohio and presented a paycheck from the Burger King at 1291 Park Avenue West in Mansfield, Ohio, issued through WesBanco and in Mennifield's name, for the amount $436.67. Fast Cash was a business providing payday loan and check cashing services.

{¶3}    Since the individual who identified himself as Mennifield did not have any previous loans through Fast Cash, Amy Barnes, an employee of Fast Cash asked him to present his photo identification, phone number, social security number and home address. Ms. Barnes scanned the identification card provided to her, which identified the individual cashing the check as Mennifield. Mennifield admitted at trial that the photographic identification card presented to Ms. Barnes was his identification card. (T. at 85).  Ms. Barnes testified that the photograph on the identification card matched the individual who was presenting the check to be cashed. Ms. Barnes, however, noticed that the address on identification card did not match the address on the Burger King check.  The individual told Ms. Barnes that he had recently moved from Columbus to Mansfield and had not yet updated his driver's license. Ms. Barnes attempted to call WesBanco to verify the Burger King check, but WesBanco refused to verify the check. In spite of these discrepancies, Ms. Barnes cashed the check because she had cashed

another WesBanco check earlier in the day and the check presented to her looked identical. After giving the individual the proceeds of the check minus Fast Cash's fee, Ms. Barnes presented the man with a receipt. The individual signed the receipt in the presence of Ms. Barnes, but did not finish spelling out the last name. (T. at 51; 87).

{¶4} Ms. Barnes called First Merit Bank, which processed Fast Cash's checks. First Merit deemed the check fraudulent and refused to honor it after finding out that Mennifield never worked at the Burger King at 1291 Park Avenue West. Further, Burger King used Money Network cards rather than paper checks, and Burger King used Richland Bank, not WesBanco. First Merit attempted to contact the individual who had identified himself as Mennifield at the phone number he provided to Ms. Barnes; however, the number was disconnected. First Merit then contacted the Ontario Police Department.

{¶5} While investigating the complaint filed by First Merit, Officer Bernice Malone of the Ontario Police Department unsuccessfully attempted to contact the individual at the number he had provided to Ms. Barnes. Additionally, Officer Malone attempted contact at the address listed on the Burger King check. Officer Malone determined that the address was invalid. Furthermore, Officer Malone determined that the social security number provide to Ms. Barnes was fake.

{¶6} Following her failed attempts to contact the person, Officer Malone created a photo lineup for Amy Barnes to view. On December 21, 2013, Officer Malone gave the photo lineup to Officer Jason Day, since Officer Day had no knowledge of the facts of this case and could act as a blind administrator of the photo lineup. Officer Day went to Fast Cash and administered the photo lineup to Ms. Barnes. After going

through the line-up twice, Ms. Barnes stated that she was one-hundred percent sure that three of the people in the lineup were not the person who cashed the fraudulent Burger King check, eighty percent sure that one other person in the lineup was not the person who cashed the fraudulent Burger King check and one-hundred percent sure that Mennifield was the person who cashed the fraudulent Burger King check.

{¶7} Following the administration of the photo lineup to Ms. Barnes on December 21, 2013, Officer Malone determined that the person whom Ms. Barnes excluded with eighty percent certainty could not have been the person whom cashed the fraudulent Burger King check, as he was in prison when the offense occurred.

{¶8} Mennifield testified in his own defense. Mennifield admitted that he had a conviction for cashing a fake check in Lima, Ohio, on September 13, 2013. Mennifield met an old friend who offered him money to help with the check-cashing scheme. Mennifield needed money, so he agreed to help. Mennifield gave the forger his identification card; the forger made a check with Mennifield's information on it, except it had a Lima address. The check in that case was also a Burger King check for $436, but Mennifield could not recall if it was for WesBanco. Mennifield admitted that he presented this friend with his photographic identification card on September 12, 2013. (T. at 88).

{¶9} Another similar case arose from Findlay, Ohio, on September 16, 2013. That case involved another Burger King check on a WesBanco account for $336.67. However, the signature on the check was not Mennifield's and the prosecution did not have identification for the person who cashed the check, so the prosecution reduced the charge to a misdemeanor and offered Mennifield two years of community control.

Mennifield insisted he did not cash the Findlay check, but was advised by his attorney to take the deal, so he did.

{¶10} When asked about the current charges, Mennifield denied ever being in Mansfield before, denied being employed by Burger King, and denied going to Fast Cash. Mennifield testified that he was at home in Columbus, Ohio, waiting to get the kids off the bus when this incident occurred in Mansfield.

{¶11} Mennifield noted that the signature on the back of the check did not match his and denied signing the check. Mennifield also denied that the signature on the receipt was similar to his signature. He noted that the signature on the receipt did not even include his full last name, and noted specific differences in the way the letters were formed.

{¶12} Mennifield admitted that he also had a prior federal conviction out of Tennessee from 2004 for aiding and abetting attempted distribution of drugs, and spent time in prison on that case.

{¶13} At the conclusion of the evidence, the jury found Mennifield guilty on the sole count of the indictment forgery, a fifth degree felony pursuant to R.C. 2913.31(A)(3).

{¶14} On February 10, 2015, the trial court sentenced Mennifield to twelve months incarceration, three years discretionary post release control, and restitution in the amount of $456.67.

*Assignments of Error*

{¶15} Mennifield raises three assignments of error,

{¶16} "I. APPELLANT'S RIGHTS TO DUE PROCESS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BECAUSE HIS CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶17} "II. THE CONVICTION FOR FORGERY WAS NOT SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

{¶18} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY IMPOSING A MAXIMUM SENTENCE."

I & II

{¶19} Mennifield's first and second assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶20} In his first assignment of error, Mennifield contends his conviction is against the manifest weight of the evidence produced by the state at trial. In his second assignment of error, Mennifield challenges the sufficiency of the evidence.

{¶21} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶22} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶23} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶24}** There is no dispute in the case at bar that a forgery had in fact occurred. Mennifield does not contest that a fraudulent Burger King paycheck was presented to Ms. Barnes on September 6, 2013. Mennifield further does not contest the fact that his photographic identification card was presented to Ms. Barnes along with the fraudulent paycheck. Mennifield's argument focuses on his contention that there was insufficient evidence to identify him as the person who presented the check to Ms. Barnes on September 6, 2013.

**{¶25}** Amy Barnes identified Mennifield in court as the person whom cashed the fraudulent Burger King check. Officer Malone and Officer Jason Day both testified that Ms. Barnes identified Mennifield in the photo lineup with one-hundred percent certainty.

**{¶26}** The incident in the case at bar occurred on September 6, 2013. The incident involving a forged Burger King paycheck in Lima, Ohio for which Mennifield

admitted that he had been convicted occurred on September 13, 2013. A third fraudulent Burger King payroll check drawn on WesBanco occurred on September 16, 2013 in Findlay, Ohio. Mennifield claimed he pled guilty to a reduced charge on the advice of his attorney. Mennifield testified at trial he did not give his friend Mennifield's photographic identification card to copy until September 12, 2013, which was *after* the incident in the case at bar.

{¶27} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E. 2d 492(1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, *80 Ohio St.3d 89, 684 N.E.2d 668(1997).* "Circumstantial evidence and direct evidence inherently possess the same probative value [.]" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." *Jenks*, 61 Ohio St.3d at 272, 574 N.E. 2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. *State v. Lott*, 51 Ohio St.3d 160, 168, 555 N.E.2d 293(1990), citing *Hurt v. Charles J. Rogers Transp. Co*, 164 Ohio St. 329, 331, 130 N.E.2d 820(1955). Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. *Lott,* 51 Ohio St.3d at 168, 555 N.E.2d 293, citing *Hurt,* 164 Ohio St. at 331, 130 N.E.2d 820.

{¶28} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Mennifield is the individual who presented the fraudulent Burger King paycheck to Ms. Barnes on September 6, 2013. We hold, therefore, that the state met its burden of production regarding each element of the crime and, accordingly, there was sufficient evidence to support Mennifield's conviction.

{¶29} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman*, 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St .2d 230, 227 N.E.2d 212(1967).

**{¶30}** Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

**{¶31}** The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

**{¶32}** The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 WL 284714 (May 28, 1996). Indeed, the jury need not believe all of a witness'

testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks, supra.*

{¶33}  We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The jury neither lost his way nor created a miscarriage of justice in convicting Mennifield of the charges.

{¶34}  Based upon the foregoing and the entire record in this matter, we find Mennifield's conviction was not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Mennifield. This court will not disturb the jury's finding so long as competent evidence was present to support it. *State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The jury heard the witnesses, evaluated the evidence, and was convinced of Mennifield's guilt.

{¶35}  Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime beyond a reasonable doubt.

{¶36}  Mennifield's first and second assignments of error are overruled.

III.

**{¶37}** In his third assignment of error, Mennifield argues that the trial court abused its discretion by sentencing him to the maximum twelve (12) month prison sentence for his conviction for forgery.

**{¶38}** R.C. 2929.12 lists general factors that must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶39}** Under R.C. 2929.11(A), the "overriding purposes" of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. R.C. 2929.11(A).

**{¶40}** Among the various factors that the trial court must consider and balance under R.C. 2929.12 are: (1) serious physical, psychological, or economic harm to the victim as a result of the offense; (2) whether the offender has a history of criminal convictions; (3) whether the offender has not responded favorably to sanctions

previously imposed by criminal convictions; and (4) whether the offender shows genuine remorse for the offense. R.C. 2929.12.

**{¶41}** R.C. 2929.11 and 2929.12 require consideration of the purposes of felony sentencing, as well as the factors of seriousness and recidivism. *See State v. Mathis*, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006–Ohio–855, ¶ 38.

**{¶42}** "[W]here the trial court does not put on the record its consideration of [Sections] 2929.11 and 2929.12 [of the Ohio Revised Code], it is presumed that the trial court gave proper consideration to those statutes." (Alterations sic.) *State v. Steidl*, 9th Dist. Medina No. 10CA0025–M, 2011–Ohio–2320, ¶13, *quoting State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912 at ¶18, fn. 4. "Unless the record shows that the court failed to consider the factors, or that the sentence is 'strikingly inconsistent' with the factors, the court is presumed to have considered the statutory factors if the sentence is within the statutory range." *State v. Fernandez*, 9th Dist. Media No. 13CA0054–M, 2014–Ohio–3651, ¶ 8, *quoting State v. Boysel*, 2d Dist. Clark No.2013–CA–78, 2014–Ohio–1272, ¶ 13.

**{¶43}** At the outset, we note that Mennifield concedes that his 12–month prison sentence is within the permissible statutory sentencing range for a fifth degree felony. See R.C. 2929.14(A)(5).

**{¶44}** At sentencing the trial court noted,

> As I have had the opportunity to go over the overriding sentencing principles under 2929.11 and then again under 2929.12, I've looked at the most serious factors, the less serious factors, the more likely recidivism factors, the less likely recidivism factors, that would be, as far as I know,

you had that manslaughter in '98, the cocaine distribution in 2004 or 2005, and then you had three cases that are kind of related in that they had a Burger King check passed in Lima, a Burger King check passed in Findlay, and then the one passed here in Richland County, so three different counties. It's Hancock, Allen County, and then Richland County for these paper checks. As the prosecutor said, I know we had talked earlier. There was some talk of a plea, but that didn't end up happening. Based on my review of your record and the sentencing, I don't know that now is the time to talk about a community-based correctional facility, although that may or may not help you. But at this point, what I'm going to do is sentence you to 12 months in prison, three years discretionary post-release control.

T. at 120-121.

{¶45} The crux of Mennifield's argument regarding his sentence concerns the amount of weight that the trial court gave to the respective factors enumerated in R.C. 2929.12. Specifically, Mennifield contends that the R.C. 2929.12 factors, when considered in his case, weigh against the imposition of a maximum term of imprisonment. However, having presided over the jury trial, the sentencing judge was familiar with the evidence presented at trial. The trial court noted during the sentencing hearing that Mennifield committed identical crimes in three different counties, and had two unrelated felony convictions in his past.

{¶46} In light of the forgoing, we cannot conclude that the sentence imposed in this case was unreasonable, arbitrary, or unconscionable.

**{¶47}** Based on Mennifield's argument and our own independent review of the record, we conclude that the trial court complied with all applicable rules and statutes in imposing its sentence such that Mennifield's sentence is not clearly and convincingly contrary to law. Moreover, we conclude that the trial court did not abuse its discretion in its imposition of a maximum term of imprisonment upon Mennifield.

**{¶48}** Mennifield's third assignment of error is overruled.

**{¶49}** For the foregoing reasons, the judgment of the Richland County Court of Common Pleas, Richland County, Ohio is affirmed.

By Gwin, P.J.,

Delaney, J., and

Baldwin, J., concur